*Temkin & Temkin, Jacob S. Temkin,* for respondents William Graham, Albert Tremblay and Mercantile Investment Corp.

*Voigt, Wright & Slade, Ernst T. Voigt, Lucien Capone, Edward J. Plunkett,* for respondent August Bus Company Lines.

WITHINGTON COMPANY *vs.* MARYLAND CASUALTY COMPANY.

APRIL 29, 1949.

PRESENT: Capotosto, Baker, Condon and O'Connell, JJ.

O'Connell, J. This action in assumpsit is before us on plaintiff's exceptions to the denial of its motion for a directed verdict and to the granting of defendant's motion for a directed verdict. Plaintiff seeks to recover on a $40,000 policy of insurance issued by the defendant, dated May 10, 1947 and effective until May 10, 1950. The policy is known as a "Boiler and Machinery Policy."

The declaration alleges that on July 2, 1947 the plaintiff was engaged in the business of curing and processing hams, bacon and other meat products; that in such business it made use of boilers, tanks, brine piping, compressors, refrigerating systems and other equipment; that on May 10, 1947 the defendant issued the policy in question; and that the plaintiff has performed all the promises and undertakings on its part in accordance with the terms and provisions of the policy.

The plaintiff further alleges that on July 2, 1947 one of the compressors and other machinery and equipment covered by the policy exploded, causing a total loss of the compressor and other equipment and consequential damage to large quantities of food products which it was processing and storing, and that such loss was caused by lack of proper refrigeration.

The undisputed evidence shows that there were two York motor-driven compressors connected with plaintiff's

refrigerating system, one 60 horsepower and the other 30 horsepower. On or about July 2, 1947 the 60 horsepower compressor exploded, causing an interruption of the refrigerating service for a period of twenty-four hours, a consequent spoilage of the meats in storage and being processed, and necessitating the purchase and installation of another compressor in place of the one damaged by the explosion. Plaintiff presented evidence to show that it suffered a total loss of $4245.

At the conclusion of the plaintiff's evidence, the defendant rested its case and each party moved for the direction of a verdict. The trial justice denied the plaintiff's motion and granted that of the defendant, to both of which rulings plaintiff duly excepted.

The plaintiff contends that the compressor which exploded was covered by the terms of the policy, while the defendant contends that such compressor was expressly excluded therein and that the consequential damage occasioned by the explosion of an "Object" not covered by the policy is likewise excluded. The trial justice agreed with defendant's contention, and the direction of a verdict in its favor was based upon his construction and interpretation of the language of the policy.

This policy contains three schedules, numbered 1, 2 and 3, and one endorsement entitled "Consequential Damage." Counsel agree and the evidence discloses that so far as coverage of "Objects" is concerned, only schedule No. 3 has any application here. This schedule, omitting parts not applicable to this case, reads as follows:

"Schedule No. 3
Refrigerating Vessels And Piping
This Schedule forms a part of Policy No. 93-096339
and is effective from noon of May 10, 1947
Assured      Withington Company
A. The Objects covered under this Schedule are identified and described as follows:
7 Goff St. &
Location    16-22 Blackstone St., Providence, Rhode Island

### Compression Type

| Designating Number of each Object | Identification of Connected Compressors | Refrigerant | Total Capacity | Brine Piping |
|---|---|---|---|---|
| 1 | 60 HP - York Motor Driven #1-39081 30 HP - York Motor Driven #2-23281 | Ammonia | 90 HP | Included |

### Absorption Type

| Designating Number of each Object | Manufacturer | Refrigerant | Total Capacity | Brine Piping |
|---|---|---|---|---|

Paragraphs B and C printed on the back of this sheet are hereby made a part of this Schedule."

It is to be noted that nothing is listed under the above heading "Absorption Type." The applicable portions of paragraphs B and C referred to above read as follows:

"Definition Of Object

B. (a) As respects any system of refrigerating vessels and piping designated in this Schedule as of the 'Compression Type', 'Object' shall mean the complete system consisting of those interconnected pipes, coils and vessels (with valves and fittings thereon) which contain refrigerant, from the discharge ends to the suction ends of any compressors connected thereto, together with any vessels which contain such coils, and shall also include while connected thereto any container of refrigerant (together with its connecting piping) used for charging the system: but shall not include any compressor; any circulating pump; any pipe, coil or vessel mounted on or forming a part of a truck or other vehicle, whether or not such pipe, coil or vessel is connected to the system; or any brine piping except as provided under clause (c) below. * * *

(c) If the word 'Included' is inserted in the column entitled 'Brine Piping', but not otherwise, 'Object' shall also include all piping containing brine and used in connection with the Object, together with valves and fittings on said piping.

Definition Of Accident

C. As respects any Object designated in this Schedule, 'Accident' shall mean

1. A sudden and accidental tearing asunder or a sudden and accidental crushing inward of the Object or any part thereof, caused by pressure of contents, or caused by vacuum therein;

2. A sudden and accidental cracking of the Object, or any part thereof, if such cracking permits the leakage of contents; or

3. A sudden and accidental bulging of the Object, or any part thereof, which is caused by pressure of contents and which immediately prevents or makes unsafe the continued use of the Object;

but 'Accident' shall not mean the tearing asunder, bulging or cracking of any rubber hose, flexible connection, safety disc, rupture diaphragm or fusible plug, nor leakage at any valve, fitting, seal, joint or connection."

The endorsement entitled "Consequential Damage," so far as it applies to plaintiff's claim, reads as follows: "In consideration of $ Included In premium, the Company hereby agrees to pay the Assured for loss on Specified Property of the Assured, and to pay such amounts as the Assured shall become obligated to pay by reason of the liability of the Assured for loss on Specified Property of others subject to the conditions of Paragraph H; all subject to a Limit of Liability of Five thousand and 00/100 Dollars ($5,000.00) for any One Accident; provided such loss is due to spoilage from lack of power, light, heat, steam or refrigeration, caused solely by an Accident (occurring while this endorsement is in effect) to an Object covered by the Schedules, of this policy, numbered 1,2&3."

A careful examination of the policy does not appear to disclose any ambiguity which would raise a question of fact as to its interpretation so as to require submission of the case to a jury. The only issue here is whether the trial justice properly construed its provisions.

Schedule No. 3 is entitled "Refrigerating Vessels And Piping" and describes the system insured. While under the heading "Identification of Connected Compressors" the two

compressors are referred to, such reference is only to further identify the *refrigerating system* insured, which appears to be the system that is powered by certain identified compressors. From schedule No. 3 above it appears that there are two kinds of refrigerating vessels which the policy may cover, *viz.,* the compression type and the absorption type. It is the compression type which is covered by the policy here, but it is clear that the "Object" covered consists of the refrigerating vessels and piping only and does not include the compressors. This is expressly set forth in clause (a) of paragraph B in schedule No. 3, which states that " 'Object' [which is what is insured under this policy] shall mean the complete system consisting of those interconnected pipes, coils and vessels * * * *which contain refrigerant, from the discharge ends to the suction ends of any compressors connected thereto* * * * *but shall not include any compressor* * * *."* (italics ours)

Since the endorsement entitled "Consequential Damage" provides for payment of loss due to spoilage from "lack of power, light, heat, steam or refrigeration, caused solely by an Accident * * * *to an Object covered by the Schedules,"* it follows that if the compressors are not to be considered as "Objects" covered by this policy, the consequential damage caused by the explosion of one of such compressors cannot be made the basis for recovery by the plaintiff under such policy. (italics ours) The plaintiff presented no evidence of damage to any part of the entire refrigerating system, except to the compressors, which are expressly excepted from coverage by the terms of the policy. It appears from the policy that its manifest purpose was to provide against a leakage or escape of the refrigerant, in this case ammonia, from the pipes, coils and vessels which contained such refrigerant, by reason of the accidental crushing inward, cracking or sudden bulging thereof.

Since the plaintiff has presented no evidence of an accident to an "Object" covered by the policy and no evidence of any damage resulting therefrom, we are of the opinion

that there was no question of fact to be submitted to the jury and that the trial justice properly directed the jury to return a verdict for the defendant.

The plaintiff's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict as directed.

*Grim & Littlefield, Benjamin W. Grim,* for plaintiff.

*William A. Gunning,* for defendant.